**EASTMAN KODAK COMPANY**

v.

**LEE-WILSON, Inc.**

Civ. A. No. 55-613-W.

United States District Court
D. Massachusetts.

Oct. 3, 1955.

Choate, Hall & Stewart, Claude R. Branch, Henry W. Minot, Jr., Boston, Mass., for plaintiff.

Irving Karg, Fox, Orlov & Cowin, Boston, Mass., for defendant.

WYZANSKI, District Judge (oral opinion from the bench).

This is a suit brought under the asserted diversity jurisdiction of this Court by a New Jersey corporation against a Massachusetts corporation. The gist of the complaint is that the defendant is engaged in violation of the Massachusetts Fair Trade Law, Mass. G.L.(Ter.Ed.) c. 93, §§ 14A to 14D, as amended. This initial hearing follows an application for the issuance of a temporary injunction.

It is not contested that the parties are citizens of different States; nor is it denied that plaintiff had made a Retailer Fair Trade Agreement with Claus Gelotte, Inc. in the form shown in the exhibit annexed to the complaint; nor is it

disputed that plaintiff gave defendant notice of the minimum fair trade prices which plaintiff was seeking to maintain within Massachusetts, and that thereafter defendant made sales of cameras manufactured by plaintiff at prices lower than those set forth in the Retailer Fair Trade Agreement which plaintiff had made with Claus Gelotte, Inc., and of which defendant had notice. More specifically, it is not contested that a sale was made on March 16, 1955 of a Kodak Pony 135 Camera Model B, for which the fair trade price was $29.75, at a price of $22.30; that a sale was made by defendant of a Brownie Hawkeye Camera Flash Model on June 10, 1955, for which the fair trade price was $6.95, at $5.25; that another sale was made on the same day of a Brownie Hawkeye Camera Flash Model at the same price; and that, on the 13th of June, 1955, the same model camera was sold to a customer at the same margin below the fair trade price.

The points which are chiefly contested are, first, whether or not this court has jurisdiction over the controversy in the light of the requirement of that statute that more than three thousand dollars, exclusive of interest and costs, should be involved.

A second point is made that plaintiff is not in fair and open competition as required by the Massachusetts statute.

Third, it is suggested that plaintiff has chosen to proceed only against four violators within Massachusetts, and that for this court now to issue an injunction against this defendant at this preliminary stage would leave defendant at the mercy of other customers of plaintiff who might also be in violation of the schedule of prices announced by plaintiff.

Fourth, it is suggested that the contract made between plaintiff and Gelotte is not a contract which plaintiff is enforcing and therefore it cannot serve as the basis for the fixing of fair trade prices under the Massachusetts statute and cannot serve as an adequate basis for this suit against defendant.

Fifth, it is said the Massachusetts statute is unconstitutional, or at least there is such grave doubt as to its constitutionality that a preliminary injunction ought not issue.

So far as concerns the question of jurisdiction, the first point to be borne in mind is that, by concession of counsel, plaintiff does a volume of business within the District of Massachusetts far in excess of one million dollars annually. Whether wisely or unwisely, the Massachusetts Legislature has reached the conclusion that it is in the interest of public policy to have a statutory provision for the maintenance of retail prices of goods of the class here involved. Implicit in this determination is the view of the Massachusetts Legislature that it is to the benefit of a manufacturer, and tends to uphold his business, to allow him to set a schedule maintaining the retail prices of his goods. Any court applying the Massachusetts statute and bearing in mind this implicit policy can hardly fail to infer that when a retailer does offer for sale a manufacturer's products at a price lower than that fixed in the manufacturer's schedule the manufacturer's economic interests are adversely affected. Whether such adverse effect is admitted by all economists, whether such adverse effect continues over a long period of time and prejudices the development of a business are problems not for judicial consideration. The statutory policy fully warrants this Court in concluding as a matter of fact that, where a manufacturer does within the District a volume of business in excess of a million dollars annually and the products which the manufacturer distributes in the area are the subject of fair trade agreements, a retailer who sells products of that manufacturer without complying with the manufacturer's schedule of prices does injure the manufacturer to the extent of at least three thousand dollars. This determination is not made because of the volume of the violator's business: it is made because the impairment of the

manufacturer's business from violations of the manufacturer's schedule is a premise upon which the whole statutory scheme is founded.

■ Insofar as defendant contends that plaintiff is not in fair and open competition with others in its business, the short answer is that it was conceded at the bar that there are for sale in this District other types of cameras and other types of films made by other companies. The defendant was not prepared to show that plaintiff was monopolizing the business in violation of the Anti-Trust Law. All that defendant asserted was that plaintiff had the lion's share of the business—whatever that may mean. To have a lion's share of the business does not indicate that one is not in fair and open competition.

■ The next branch of defendant's argument is that plaintiff is not entitled to relief at this preliminary stage because plaintiff has not proceeded against more than three other violators. "Leg over leg the dog got to Dover". In due time plaintiff may remedy this asserted defect in its procedure, but those who are first proceeded against can hardly assert with validity that the complaint against them should not result in judgment against them until all others who are violators are also brought into court. The plaintiff must begin at some point, and it is defendant's misfortune that it is selected before others of its competitors.

■ The fourth contention of defendant is that in this particular proceeding the plaintiff cannot succeed because the Retailer Fair Trade Agreement upon which it relies as setting the schedule of prices was made by Gelotte, and Gelotte, according to the testimony received today, has made at least one sale of plaintiff's product below the price schedule set in the agreement with plaintiff. The difficulty with this contention of defendant is that there is no evidence whatsoever that the agreement between plaintiff and Gelotte was fictitious; indeed, the evidence would indicate that plaintiff has endeavored to check on Gelotte as it has sought to check upon other retailers of its goods. The plaintiff had, so far as the evidence indicates, no knowledge that Gelotte was failing to comply with its agreement until in this particular case at bar, a few days ago, defendant drew to plaintiff's attention the isolated sale of one camera by Gelotte to an employee of defendant at a price lower than that specified in the agreement between plaintiff and Gelotte. It is no barrier to the enforcement of the Massachusetts Fair Trade Act that the contract upon which plaintiff relies was broken, not by the plaintiff and not with the acquiescence of the plaintiff, but by the other party to the contract.

■■ The final suggestion made at the bar is that the Massachusetts statute is unconstitutional. In the light of earlier rulings made by this Court and by the Court of Appeals for this Circuit, this contention cannot be allowed to prevail. While no one can speak with assurance as to what action the Massachusetts Supreme Judicial Court will take with respect to the contention made at its bar in the case now pending, it is fair to say that there is a presumption of the constitutionality of legislation, and this presumption is strongly enhanced when judges of this court have already, acting under this statute, issued restraining orders.

The temporary injunction requested will be granted, and the matter is set for prompt hearing, in accordance with defendant's urgent and repeated requests, for the week of October 3, 1955.

\* \* \* \* \*

Whenever defendant has had an adequate opportunity to consider evidence it wishes to present and counsel have worked out any stipulation of facts agreeable to them, the defendant should notify the Court that it is ready for trial, and the Court will then endeavor to arrange a date convenient to counsel and to the Court.

I will sign the injunction and fix the bond at $250.